### STIMPSON COMPUTING SCALE CO. v. LUCAS, Collector of Internal Revenue.

District Court, W. D. Kentucky.

Dec. 22, 1927.

474

Joseph D. Peeler, of Los Angeles, Cal., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

DAWSON, District Judge.

The plaintiff, Stimpson Computing Scale Company, was organized as a corporation under the laws of Kentucky on March 31, 1919, and has been engaged in business since that date. It adopted the calendar year as its fiscal year, and, of course, for income tax purposes its taxable year was and is the calendar year. For the nine months extending from March 31, 1919, the date of its organization, to December 31, 1919, the corporation sustained in its business a net loss of $33,949.-81. In April, 1921, it filed its income tax report for the calendar year 1920. This report showed a tax liability of $5,128.19, which was paid by the plaintiff in installments, the last installment being paid on December 14, 1921.

On March 10, 1925, the Commissioner made a deficiency assessment against the plaintiff of $4,419.08, on account of income taxes for the calendar year 1920. This deficiency assessment arose wholly out of the disallowance by the Commissioner of the 1919 loss of $33,949.81, as an authorized deduction under section 204 of the Revenue Act of 1918 (40 Stat. 1060) from the 1920 net income. On March 21, 1925, the plaintiff appealed from this assessment to the Board of Tax Appeals. The matter was heard there on a stipulation of facts, the sole question involved being whether or not the 1919 loss was allowable as a deduction from the 1920 net income, under the provisions of section 204 of the Revenue Act of 1918. The Tax Board affirmed the Commissioner on November 29, 1926, and on February 16, 1927, demand was made on the plaintiff for payment of the deficiency assessment, which was paid under protest on February 23, 1927. On the same date the plaintiff filed with the Commissioner a demand for a refund of $7,-888.21, on account of taxes collected for the taxable year 1920. The plaintiff claimed that it was entitled to deduct from the 1920 net income the $33,949.81 loss sustained in 1919, and that upon this basis its total tax for 1920 should have been $1,658.36, instead of the amounts it had voluntarily paid, plus the deficiency assessment paid under protest, and aggregating in all the sum of $9,549.77.

It will be observed that in this demand for a refund the plaintiff claimed the right to have returned to it, not only the amount paid as a deficiency assessment, but also the payments made under its own report during the year 1921, the last of which was made on December 14, 1921. Refund was refused, and this suit resulted.

The defendant advances three contentions:

1st. That the petition shows on its face that this court has no jurisdiction to award the plaintiff any recovery on account of the installment payments made in 1921, as it discloses that demand for refund of such sums was not made within four years of their payment, as required by section 3228 of the Revised Statutes, as amended and re-enacted by section 1112 of the Revenue Act of 1926 (26 USCA § 157).

2d. That the plaintiff was not entitled, under the provisions of section 204(b) of the Revenue Act of 1918, to have deducted from its net income of 1920 the loss sustained by it for its nine months' operation in 1919, for the reason that the law did not contemplate the allowance of any deduction for a taxable period of less than twelve months.

3d. That the deduction was not allowable, for the reason that being in business in 1918 was a prerequisite, under section 204, to the right to deduct any part of the loss sustained in 1919 from the 1920 income.

I shall deal with these questions in the order stated.

Section 3226 of the Revised Statutes, as re-enacted by section 1113 of the Revenue Act of 1926 (44 Stat. 116, 26 USCA § 156), provides:

"No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected *until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof*; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, *nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates*. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.

"(b) This section shall not affect any proceeding in court instituted prior to the enactment of the Revenue Act of 1924."

Section 3228, Revised Statutes, as re-enacted by section 1112 of the Revenue Act of 1926 (26 USCA § 157), provides:

"(a) All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as provided in sections 284 and 319 of the Revenue Act of 1926, be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax, penalty, or sum.

"(b) Except as provided in section 284 of the Revenue Act of 1926, claims for credit or refund (other than claims in respect of taxes imposed by the Revenue Act of 1916, the Revenue Act of 1917, or the Revenue Act of 1918) which at the time of the enactment of the Revenue Act of 1921 were barred from allowance by the period of limitation then in existence, shall not be allowed."

In view of these sections of the Revenue Act of 1926, it would seem clear that, in order to maintain an action in court for the recovery of taxes erroneously collected, the taxpayer must allege that a claim for refund was made within the time provided by the statute; that refund had been denied by the Commissioner, or that he had failed to act upon same for a period of more than six months after the claim had been filed. These allegations are jurisdictional ones, and must be made, or facts must be pleaded in avoidance of the requirement that claim for refund must be made within four years from the date of payment. Whether or not jurisdictional facts are pleaded involves no question of limitation, as the plaintiff in this case seems to think. It is simply a question of whether the plaintiff has pleaded facts showing his right to resort to a suit. To plead these jurisdictional facts in a tax suit of this kind is just as essential as it is to plead diversity of citizenship and the existence of the jurisdictional amount in order to confer jurisdiction on the federal court on the ground of diversity of citizenship.

In this case the plaintiff not only fails to plead the existence of the necessary jurisdictional facts, but its petition affirmatively shows that the jurisdictional prerequisites do not exist. Its petition shows that it did not comply with section 3228 of the Revised

Statutes as amended by making a claim for a refund within four years after the payment of those taxes which were paid by it in the year 1921. In so far as the petition shows, the first demand for a refund of these taxes was that which embraced also the demand for a refund of the taxes paid under the deficiency assessment, and which was made on February 23, 1927. The plaintiff undertakes to argue that his protest against the delinquency assessment and his hearing on that question before the Board of Tax Appeals, which involved solely the right under the 1918 act to deduct from the 1920 net income the 1919 loss, was in effect presenting a claim for a refund for those payments made in 1921, but I cannot agree with this suggestion. A claim for a refund, within the meaning of section 3228 of the Revised Statutes, as amended, undoubtedly has reference to a demand upon the Commissioner for the refund of a specific amount of taxes paid. This demand was for the first time presented on February 23, 1927—considerably more than four years after the last one of the 1921 payments was made. I am therefore of the opinion that plaintiff's pleading affirmatively shows that, as to the payments made in 1921, he has not complied with the provisions of section 3228 of the Revised Statutes, and is therefore, by the provisions of section 3226 of the Revised Statutes, precluded from maintaining a suit to recover any of these payments.

■ As to the deficiency assessment of $4,419.08, no such obstacle presents itself. The sole question involved as to this item is: Does section 204(b) of the Revenue Act of 1918 entitle the plaintiff to deduct from its net income for the calendar year 1920 the losses sustained by it during the first nine months of its existence, extending from March 31, 1919, to December 31, 1919? The defendant's suggestion that plaintiff is not entitled to this deduction, because the loss was not sustained through a full twelve months' taxable period, it seems to me, is so utterly without merit as to require no consideration on the part of the court.

■ The real question, therefore, is that suggested in the defendant's third reason for the disallowance of the deduction, viz: Does section 204(b) of the Revenue Act of 1918 fix as a condition precedent to the right to deduct the 1919 losses from the 1920 net income the existence of the taxpayer and the conduct of business by it for the taxable year immediately preceding 1919?

Section 204(b) of the Revenue Act of 1918 (40 Stat. 1061), in so far as applicable,

is as follows: "If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year."

The defendant contends that it was the purpose of this act to relieve against the heavy taxes of 1918. I cannot agree with this contention. It seems perfectly clear to me that the purpose of the law was to furnish some relief from losses which Congress knew would inevitably be sustained during the period extending from October 31, 1918, to January 1, 1920, as the result of the sudden termination of World War hostilities. The most logical way for Congress to grant relief against this situation was to allow this loss to be used as a deduction from the net income for other taxable years. It was known, of course, that in 1918 income taxes had reached their highest peak, both as the result of inflated values and earnings and of the rates applied thereto. So it was the most natural thing in the world for Congress, in order to give greatest opportunity to absorb the loss sustained in 1919, to provide that that loss might be deducted from the net income of the year when earnings had been greatest and taxes the highest—1918. As an evidence, however, that the purpose of Congress was to provide relief against the loss sustained in 1919, rather than to afford relief against the high taxes of 1918, it was provided that any net loss of 1919 in excess of the net income for 1918 might be deducted from the net income of the taxable year 1920.

It will thus be observed that the central idea was to provide some means for absorbing the loss of 1919. Furthermore, the statute expressly declares that *any taxpayer* who has sustained a net loss is entitled to the de-

duction, first to be made from the net income of the previous taxable year, and any excess from the net income of the subsequent taxable year. The language "any taxpayer" is too general for the court to restrict it by interpretation to mean, as is contended by the defendant, any taxpayer in existence or in business in 1918. To so construe the statute would, it seems to me, amount to judicial legislation.

After a careful consideration of the section in question, I am satisfied that in those cases where the corporation was not in existence in 1918, or where it was not in business in 1918, the net loss sustained in 1919 was deductible from the net income in 1920.

Therefore, the plaintiff is entitled to judgment against the defendant for the amount of the deficiency assessment and interest, and judgment may be drawn accordingly.