## STERLING OIL & GAS CO. v. LUCAS.
### No. 1198.

District Court, W. D. Kentucky, at Louisville.
July 21, 1931.

Woodward, Hamilton & Hobson, of Louisville, Ky., and Edward C. O'Rear, of Frankfort, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and T. H. Lewis, Jr., and E. J. Dowd, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

DAWSON, District Judge.

In this suit plaintiff seeks a refund of income and profits taxes which it was required to pay for the taxable year 1920. The essential facts necessary to a proper understanding of the issues involved are as follows:

The Flesher Petroleum Company was organized as a corporation under the laws of the state of Delaware on January 13, 1919, with power to engage in the business of buying, selling, and developing oil and gas leases, and in 1924, by an amendment to its articles of incorporation, its corporate name was changed to Sterling Oil & Gas Company. In 1919, shortly after its incorporation, plaintiff acquired 3,800 acres of undeveloped oil

414

leases in Kentucky, and also an interest in leases in Oklahoma. Development was started on these leases in 1919, which resulted in considerable production in 1919, 1920, and subsequent years. The Kentucky property was made up of many small tracts, but the plaintiff acquired these leases en bloc, paying a lump sum for the entire acreage. It sold a part of the Kentucky leases in 1919 and the remainder thereof in 1920, and the aggregate price received for the leases resulted in a profit to the plaintiff.

During the taxable year 1919 the plaintiff expended $149,670.48 in what it characterized as the intangible expenses of drilling and equipping producing oil wells on its Kentucky and Oklahoma properties. These so-called intangible expense items cover all the cost involved in the drilling and equipping of a producing well except the cost of the physical equipment having a salvage value, such as casing, pipe, pumping equipment, etc. During the year 1920 the plaintiff expended on account of the so-called intangible expenses in the drilling and equipping of producing wells on its Kentucky and Oklahoma properties, $162,684.20.

Prior to March 15, 1920, plaintiff filed its income tax return for the calendar year 1919, showing thereon a net taxable income of $1,-256.78. As this amount was less than its statutory exemption, of course it paid no tax. In this return plaintiff reported no profit on account of its 1919 sales of Kentucky leases, and the so-called intangible development cost incurred in 1919 was not deducted as an ordinary and necessary operating expense, but was treated as a capital expenditure. On or about February 10, 1921, after plaintiff had sold all of its Kentucky leases and prior to filing its income tax return for the year 1920, plaintiff filed an amended return for the year 1919, in which it reported as additional income for that year $48,561.82 profit on the sale of those Kentucky leases which were sold in 1919. In the amended return plaintiff also claimed as an ordinary and necessary expense deduction $149,670.48, intangible development cost incurred in 1919. The amended return showed a net loss for the year 1919 of $96,612.98. In a letter which accompanied the amended return the taxpayer explained that the amended return was filed in order that it might report the profit realized in 1919 on sales of Kentucky leases. It was explained that, inasmuch as the entire tract of 3,800 acres of Kentucky leases was purchased for a lump sum, and when these leases were sold they were sold in small tracts,

it was impossible to allocate to the year 1919 the profit realized on account of sales made that year until a sale of all the Kentucky leases had been effected, which was done in 1920. The total profit realized from a sale of these leases was allocated to the two years on the basis of the percentage of the total sale price realized in each year, and the amended return was made on this basis. The letter referred to contained the following explanation of the handling in the amended return of the intangible development expense item of $149,670.48: "In closing our books for 1929 we failed to make any final disposition of the development costs and expenses, and the accountant in the preparation of our original return capitalized these expenditures. Upon order from the proper officers, and approved by our board of directors, the accountant has been instructed to make final disposition of these costs and expenses by charging to capital expenditures only the physical property and charging to expense the incidental items of labor, hauling, drilling, etc., which do not represent physical property. This has been done and is so taken up on the amended return."

Plaintiff made its tax return for the year 1920 on April 11, 1921. In this return it did not capitalize the $162,684.20 of intangible development costs expended during the taxable year, but treated same as an ordinary and necessary expense in carrying on its business and claimed same as a deduction from gross income. On this basis the return showed no tax due.

In 1927, on a reaudit of plaintiff's books, the Commissioner of Internal Revenue disallowed as a deduction for the year 1919 the $149,670.48 intangible development expense claimed as a deduction by the plaintiff in its amended return for that year, and $162,684.-20 claimed by the plaintiff as a deduction for the year 1920, and held that each of these items was a capital expenditure, and for each of these years the Commissioner allowed only a proportionate part of these sums by way of a reasonable allowance for depletion and depreciation, under the provisions of section 234(a) (9) of the Revenue Act of 1918 (40 Stat. 1077). On this basis he determined that for the year 1919 the plaintiff had sustained a net loss of $7,656.65, and for the year 1920 had received a net income of $97,209.97. The Commissioner held that the net loss found by him to have been sustained in 1919 was not deductible from the net income found by him for the year 1920, under the provisions of section 204(b) of the Revenue Act of 1918

(40 Stat. 1060). As a result of this reaudit, the plaintiff was required to pay the taxes for the year 1920 which are sought to be recovered in this case.

The case presents only two questions: (1) Was the plaintiff entitled to deduct the items of intangible development expense referred to, in arriving at net income for each of the years involved? (2) Was plaintiff entitled to deduct from the 1920 net income any net loss sustained in 1919? These questions will be dealt with in the order stated.

The provisions of the Revenue Act of 1918 applicable to the first question stated are as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date; Provided further, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

Article 223 of Regulations 45, promulgated by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury for the administration of the Revenue Act of 1918, as authorized by section 1309 of that act (40 Stat. 1143), is as follows:

"Art. 223. *Charges to Capital and to Expense in the Case of Oil and Gas Wells.*— Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as an operating expense or charged to the capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as an operating expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells. An election once made under this option will control the taxpayer's returns for all subsequent years. Casing-head gas contracts have been construed to be tangible assets and their cost may be added to the capital account returnable through depletion, following the rate set by the oil wells from which the gas is derived, or, if the life of the contract is shorter than the reasonable expectation of the life of the wells furnishing the gas, the capital invested in the contract may be written off through yearly allowances equitably distributed over the life of the contract. All oil produced during the taxable year, whether sold or unsold, must be considered in the computation of the depletion allowance for that year. In computing net income all oil in storage at the beginning and at the end of the taxable year must be inventoried at cost, that is, unit cost plus lifting cost. Where deductions for depreciation or depletion have either on the books of the taxpayer or in his returns of net income been included in the past in expense or other accounts, rather than specifically as depreciation or depletion, or where capital expenditures have been charged to expense in lieu of depreciation or depletion, a statement indicating the extent to which this practice has been carried should accompany the return."

If the Commissioner had the authority to grant to taxpayers the option of treating the so-called intangible costs of developing an oil property as either a deductible operating expense or a capital expenditure, as is done in article 223, then it is not important to determine whether, according to scientific accounting, this expense is a capital item or an operating expense. Taxation is a practical matter, and, in a system of taxation as complicated as the Federal Income Tax Law, Congress necessarily vested in the Commissioner considerable discretion in its practical administration. Of course, he has no right either to enlarge or to take from the provisions of the act; but he undoubtedly has the right to prescribe reasonable rules and regulations for the administration of the law, and within reasonable limits this power includes the authority to determine what are ordinary and necessary expenses to be deducted under the law in arriving at net income. I do not mean by this that he can arbitrarily declare an item to be deductible as an ordinary and necessary expense when no such classification can reasonably be given to the item under the statute; nor do I mean that he has the power, arbitrarily or unreasonably, by regulation, to exclude from deductible operating expense items that are clearly such under the act.

While it appears to me a sounder accounting practice to classify the so-called intangible development expenses as invested capital, yet the matter is a debatable one, and, even before the matter became a live subject with the enactment of the income tax laws, some oil-producing companies treated such items as invested capital, to be recovered by depletion and depreciation, while others treated them as operating expenses for the year in which incurred. I am of the opinion that the proper classification of these items is sufficiently debatable to authorize the Commissioner to determine the manner in which they shall be treated and to justify the regulation that they may be treated either as operating expense or as invested capital, at the option of the taxpayer. At any rate, I think continued administrative acceptance and congressional sanction give the regulation the force and effect of law.

Article 223 was in force when the Revenue Act of 1921 was enacted, and was repeated in practically the same language in Regulation 62, promulgated for the administration of the Revenue Act of 1921, and in Regulations 65, 69, and 74, promulgated for the administration of the Revenue Acts of 1924, 1926, and 1928, respectively. Each of these acts specifically authorizes the Commissioner, with the approval of the Secretary of the Treasury, to make all needful rules and regulations for the enforcement of its provisions. Each contains a substantial re-enactment of that part of section 234 of the Revenue Act of 1918 which permits the deduction of ordinary and necessary operating expenses in determining taxable income, and each contains a substantial re-enactment of that part of section 234(a) (9) of the Revenue Act of 1918 which authorizes as a deduction from gross income a reasonable allowance for depletion and depreciation of oil wells and their improvements, under rules and regulations prescribed by the Commissioner, with the approval of the Secretary of the Treasury. At the time Congress enacted each of the revenue acts referred to, it must be presumed to have known of the regulations promulgated at its direction by the Commissioner for the administration of the prior act. With this knowledge of the regulations of the Commissioner permitting the taxpayer, at his option, to capitalize these items and recover the costs thereof through depletion, or to deduct them as operating expense in the year in which incurred, under the Revenue Act of 1918; and with this ruling of the Commissioner repeated in the regulations promulgated for the administration of each of the succeeding Revenue Acts of 1921, 1924, 1926, and 1928 (42 Stat. 227; 43 Stat. 253; 44 Stat. 9; 45 Stat. 791 [26 USCA § 2001 et seq.]), with no attempt in any of these acts to change or modify this ruling of the Commissioner, it will be presumed that Congress has given its sanction to the Commissioner's classification of these items.

We thus have not only a long and unbroken ruling of the Commissioner, authorizing such items to be classified as ordinary and necessary expense, at the option of the taxpayer, but, in addition, legislative sanction of such ruling; and this departmental and legislative construction is binding upon the courts. Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; United States v. Cerecedo Hermanos Y Compania, 209 U. S. 337, 28 S. Ct. 532, 52 L. Ed. 821. Therefore plaintiff is entitled to deduct these items as operating expense in the year in which incurred, unless by capitalizing them in its original return for the year 1919 it elected to

treat them as capital expenditure, recoverable through depletion and depreciation.

█ I do not think the original 1919 return should be accepted as conclusive on this question of election. An election implies a deliberate choice. The plaintiff had not deliberately made this choice for any prior taxable year, because it was not in business prior to 1919. The letter accompanying the amended return for 1919 explains that no final disposition of the development expenses had been made by the taxpayer at the end of the taxable year. The fair inference to be drawn from the letter is that the accountant making up the original return was alone responsible for treating these items as capital expenditure. It is fairly inferable from the record in this case that this accountant was inexperienced in such matters. The letter transmitting the amended return shows that, when the question of the method of treating these items was put up to the board of directors, that body elected to treat them as ordinary and necessary operating expense, and directed the accountant to so handle them on the books. They were so handled and reported in the amended return. The fair inference from the letter is that the matter first had the attention of the directors after the original return was filed and before the filing of the amended return. They were treated in like manner in the 1920 return, and, so far as this record discloses, have been so treated in all subsequent returns. This is not a case where the taxpayer is claiming the right to treat them as capital expenditures one year and as operating expense another year. From the time the amended return for 1919 was filed, these items have been consistently treated as operating expense, and I am constrained to hold, under all the proof, that plaintiff never elected to treat them otherwise.

█ The remaining question for decision·is the right of the plaintiff to have deducted from its 1920 income its net loss sustained in 1919. Plaintiff's rights in this respect are controlled by section 204(b) of the Revenue Act of 1918. The question is no longer an open one in this jurisdiction. It was thoroughly considered, and decided in favor of the plaintiff's contention, by this court in the case of Stimpson Computing Scale Co. v. Lucas, 39 F.(2d) 473. See, also, United States v. Carroll Chain Co. (D. C.) 8 F.(2d) 529; Pennsylvania Chocolate Co. v. Lewellyn (D. C.) 27 F.(2d) 762, 763.

A finding of facts and judgment, conforming to the views herein expressed, may be prepared and presented for entry.