FOSTER WHEELER CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 96610.    Promulgated June 1, 1939.

*S. M. Meyer, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

OPINION.

ARUNDELL: This proceeding is before us on a motion of the Commissioner to dismiss for lack of jurisdiction. The motion raises the single and precise question of whether this Board has jurisdiction to redetermine deficiencies determined by the Commissioner in respect of excess profits liability on Navy contracts under the provisions of the so-called Vinson Act.

The foundation for this proceeding is a letter from the Commissioner to the petitioner, dated November 26, 1938, reading:

> You are advised that the determination of your excess profits liability on Navy Contracts for the taxable year ended December 31, 1936, discloses a deficiency of $883.63 as shown in the statement attached.
>
> In accordance with the provisions of section 272 (A) of the revenue act of 1934 and section 3 of the Vinson Act of March 27, 1934, as amended by the Act of June 25, 1936, notice is hereby given of the deficiency mentioned.
>
> Within 90 days (not counting Sunday or a legal holiday in the District of Columbia as the 90th day) from the date of the mailing of this letter, you may file a petition with the United States Board of Tax Appeals for a redetermination of the deficiency.
>
> Should you not desire to file a petition, you are requested to execute the enclosed form and forward it to the Revenue Agent in Charge, 90 Church Street, New York, N. Y., for the attention of LAL-90D. The signing and filing of this form will expedite the closing of your returns by permitting an early assessment of the deficiency, and will prevent the accumulation of interest, since the interest period terminates 30 days after filing the form, or on the date assessment is made, whichever is earlier.

1

A petition for redetermination of the $883.63 deficiency in excess profits liability was filed with the Board within 90 days of the date of the Commissioner's letter. According to the material facts alleged therein, taken as true for present purposes, the petitioner entered into two contracts with the United States Navy, one in 1934 and one in 1936. The 1934 contract resulted in a loss. A profit was realized on the 1936 contract, which as computed by the Commissioner, was $883.63 in excess of 10 percent of the contract price. The Commissioner refused to allow the loss on the 1934 contract to be offset against the excess profit on the 1936 contract on the ground that the 1934 contract was completed in 1935, and not in 1936 as contended by the petitioner. The Commissioner's determination as to the year of completion of the 1934 contract is alleged to be erroneous in the petition filed herein, but the matter is not at issue at this stage of the proceeding.

The Commissioner's argument against jurisdiction, summarized, is that two fundamental prerequisites to invoking the Board's jurisdiction are (1) the determination of a *deficiency in tax*, and (2) the sending of a notice thereof; that the Vinson Act does not purport to impose a tax and the Commissioner's determination of an excess profits liability is not a determination of a *deficiency in tax*, wherefore such determination does not meet the first prerequisite to jurisdiction.

The statute known as the Vinson Act, 48 Stat. 503, as amended by 49 Stat. 1926 (Title 34, U. S. C. A., §§ 494–497), authorizes, in section 2, the President of the United States to undertake the construction of certain vessels and aircraft. Section 3 (Title 34, U. S. C. A., § 496)[1] directs the Secretary of the Navy to submit construction estimates and authorizes appropriation therefor, and continues, in material part as follows:

*Provided*, that no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel or aircraft, or any portion thereof, herein, heretofore, or hereafter authorized unless the contractor agrees—

\* \* \* \* \* \* \*

(b) To pay into the Treasury profit, as hereinafter provided shall be determined by the Treasury Department, in excess of 10 per centum of the total contract prices, of such contracts within the scope of this section as are completed by the particular contracting party within the income taxable year, such amount to become the property of the United States, but the surety under such contracts shall not be liable for the payment of such excess profit: *Provided*, That if there is a net loss on all such contracts or subcontracts completed by the particular contractor or subcontractor within any income taxable year, such net loss shall be allowed as a credit in determining the excess profit, if any,

---

[1] Further amended by the National Defense Act of April 3, 1939, in respects not material to this proceeding.

for the next succeeding income taxable year: *Provided further,* That if such amount is not voluntarily paid the Secretary of the Treasury shall collect the same under the usual methods employed under the internal revenue laws to collect Federal income taxes: *Provided further,* That all provisions of law (including penalties) applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury as provided by this section, and to refunds by the Treasury of overpayments of excess profits into the Treasury; * * * *And provided further,* That the income taxable years shall be such taxable years beginning after December 31, 1935, except that the above provisos relating to the assessment, collection, payment, or refunding of excess profit to or by the Treasury shall be retroactive to March 27, 1934.

Title I of the Revenue Act of 1934, referred to in the Vinson Act, imposes Federal income taxes. Section 271, a part of Title I, defines a deficiency, and section 272, also a part of Title I, prescribes the procedure to be followed after determination of a deficiency. As far as concerns our present question, section 271 may be said to define a deficiency as the amount by which the correct income tax exceeds the amount reported by the taxpayer, and section 272 authorizes the Commissioner to send a notice of his determination of a deficiency in income tax to the taxpayer, and permits the taxpayer to petition the Board for a redetermination of such deficiency. The Commissioner points out that the liability under Title I of the Revenue Act of 1934 is a tax liability, whereas the liability of a contractor under the Vinson Act is a contractual liability, and that the Board was created and is authorized to redetermine tax liabilities and not contract liabilities.

The original function of the Board was to hear and determine cases between taxpayers and the Commissioner, based on deficiencies in taxes. The Board, as originally created, was specifically given jurisdiction only in cases of deficiencies in income, estate, and gift taxes imposed by the Revenue Act of 1924,[2] and by implication in cases involving income, profits, and estate taxes under earlier statutes.[3] In succeeding statutes Congress has added to the matters originally justiciable by the Board not only the power to redetermine deficiencies in other taxes, but other powers. By the Revenue Act of 1926 there was added jurisdiction to determine overpayments,[4] and jurisdiction to hear and decide transferee cases.[5] Transferee liability, while considered in a practical aspect as a tax liability,[6] is by statute provided for as a separate liability, namely, the liability at law or in

---

[2] Sec. 900 (e), Revenue Act of 1924.
[3] Secs. 280 and 316, Revenue Act of 1924.
[4] Secs. 284 (e), 319 (c), Revenue Act of 1926.
[5] Secs. 280, 1000, Revenue Act of 1926.
[6] *United States* v. *Updike,* 281 U. S. 489.

equity of a transferee of property of a taxpayer. Our jurisdiction in transferee cases is firmly established.[7] Thus it is seen that the Board's jurisdiction has not been static. It has changed as Congress has seen fit from time to time to add to it, and this, in view of the Board's being a creature of Congress, is undoubtedly within the Congressional power. Historical precedent for change of powers exists in the Court of Claims, which at first was "merely an auditing board",[8] but whose powers and jurisdiction have been added to by numerous Congressional acts. Assuming, but not deciding, that liability for excess profits under the Vinson Act is not a tax liability, no reason has been advanced why Congress may not require the Board to hear and redetermine deficiencies in such liability. The question then is whether Congress has manifested such intention.

The language of section 3 of the Vinson Act is strikingly like that of other legislation which in recent years has brought within the jurisdiction of the Board proceedings other than those relating to taxes originally justiciable by the Board. Examples are section 702 (b) of the Revenue Act of 1934, relating to excess profits tax, and section 503 (a) of the Revenue Act of 1936, relating to tax on unjust enrichment. These are compared with section 3 of the Vinson Act in the footnote.[9]

In *Will County Title Co.*, 38 B. T. A. 1396, we said that the effect of section 702 (b), Revenue Act of 1934, "is to permit the filing of petitions for redetermination of deficiencies in excess profits tax in the same manner as deficiencies in income tax." In *John A. Gebelein, Inc.*, 37 B. T. A. 605, involving section 503 (a), Revenue Act of 1936, we said that "there is no suggestion by either side that such taxes are not justiciable by the Board  *  *  *." While in both cited cases we declined to take jurisdiction, the refusal was on grounds other than our power to redetermine the kinds of taxes involved in those proceedings.

The recently enacted Internal Revenue Code [10] carries conviction that Congress intended to place the redetermination of excess profits liability within the jurisdiction of the Board. The internal revenue

---

[7] *Phillips* v. *Commissioner*, 283 U. S. 589.

[8] *Langford* v. *United States*, 101 U. S. 341, 344.

[9] [Sec. 3, Vinson Act.]  *  *  *  all provisions of law (including penalties) applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury as provided by this section, and to refunds by the Treasury of overpayments of excess profits into the Treasury.

[Sec. 702 (b), Revenue Act of 1934.]  All provisions of law (including penalties) applicable in respect of the taxes imposed by Title I of this Act, shall, insofar as not inconsistent with this section, be applicable in respect of the tax imposed by this section, except that the provisions of section 131 of that title shall not be applicable.

[Sec. 503 (a), Revenue Act of 1936.]  All provisions of law (including penalties) applicable with respect to taxes imposed by Title I of this Act, shall. insofar as not inconsistent with this title, be applicable with respect to the taxes imposed by this title, except that the provisions of sections 101, 131, 251, and 252 shall not be applicable.

[10] Approved February 10, 1939.

title of the code is divided into subtitles A to F. Subtitle A bears the caption "Taxes Subject to the Jurisdiction of the Board of Tax Appeals." It contains five numbered chapters, of which chapter 1 relates to "Income Tax," and chapter 2 deals with "Additional Income Taxes." The additional income taxes that are the subject of chapter 2 are listed in four subchapters, as follows:

Subchapter A—Personal Holding Companies.
Subchapter B—Excess Profits Tax.
Subchapter C—Excess Profits on Navy Contracts.
Subchapter D—Unjust Enrichment.

Subchapter C, set out in full below,[11] contains all the presently material provisions of the Vinson Act relating to determination and collection of excess profits liability, with only such changes in phraseology as necessitated by transfer of the provisions from the original enactment into the code, and the change in the years affected. The application of section 650 to the years beginning after December 31, 1938, simply brings that section into harmony with the purpose of making the code effective, generally, beginning with the year 1939. See code sections 4 and 5. The code does not purport to be new legislation, but as set forth in section 4 "is intended to include all general laws * * * relating exclusively to internal revenue, in force on the 2d of Jannuary, 1939 (1) of a permanent nature or (2) of a temporary nature if embraced in said Internal Revenue Title." Subchapter C contains no substantive provisions that were not in the Vinson Act. The inclusion of subchapter C in the code among the matters that are subject to the jurisdiction of the Board is, in our opinion, an unmistakable mandate of Congress for us to hear proceedings based on the Commissioner's determination of deficiencies in excess profits on Navy contracts under the provisions of the Vinson Act.

The Commissioner's motion to dismiss will be denied.

Reviewed by the Board.

*Order denying motion to dismiss will be entered.*

---

[11] [Subchapter C—Excess Profits on Navy Contracts.]

SEC. 650. METHOD OF COLLECTION.—If the amount of profit required to be paid into the Treasury under section 3 of the Act of March 27, 1934, c. 95, 48 Stat. 505, as amended by the Act of June 25, 1936, c. 812, 49 Stat. 1926 (U. S. C., Supp. III, Title 34, § 496), with respect to contracts completed within income-tax taxable years beginning after December 31, 1938, is not voluntarily paid, the Secretary shall collect the same under the usual methods employed under the internal revenue laws to collect federal income taxes.

SEC. 651. LAWS APPLICABLE.—All provisions of law (including penalties) applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, 48 Stat. 683, and not inconsistent with section 3 of said Act of March 27, 1934, shall be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury as provided by section 650, and to refunds by the Treasury of overpayments of excess profits into the Treasury.