St. Marys Oil & Gas Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 93977. Promulgated June 28, 1940.

*Frederick L. Pearce, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

ARUNDELL: In the memorandum opinion heretofore entered we held that the interest paid in 1935 was "attributable to the mineral property" within the meaning of article 23 (m)–1 (*h*) of Regulations 86, and, therefore was to be deducted in determining the net income from the property under section 114 (b) (3) of the Revenue Act of 1934.

The petitioner contends that for purposes of computing the allowable depletion interest paid should not be deducted from gross income from the property. The effect of this, if sustained, will be to allow a greater depletion deduction than allowed by the Commissioner.

The basic statutory provision in this case is section 23 (m) of the Revenue Act of 1934 which grants "in the case of  *  *  *  oil and gas wells  *  *  *  a *reasonable* allowance for depletion  *  *  *." This broad grant is limited by section 114 (b) (3), which allows as a depletion deduction 27½ percent of the gross income from the property,[1] provided, however, that: "Such allowance shall not exceed 50 per centum of the net income of the taxpayer  *  *  *  from the property."

Pursuant to authority granted in section 23 (m) the respondent promulgated Regulations 86, and in article 23 (m)–1 (*h*) defined net income from the property as follows:

 *  *  *  Net income of the taxpayer  *  *  *  from the property  *  *  * means the gross income from the property  *  *  *  less the allowable deductions attributable to the mineral property upon which the depletion is claimed

---

[1] Gross income from the property is defined in *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, as "gross income received from the operation of the oil and gas wells by one who has a capital investment therein  *  *  *."

\* \* \*, including overhead and operating expenses, development costs properly charged to expense,[2] depreciation, taxes, losses sustained, etc. \* \* \*. Deductions not directly attributable to particular properties or processes shall be fairly allocated.

Counsel for the petitioner emphasizes the fact that interest is not among the items specified in the quoted article as deductions from gross income in determining net, and further urges that good accounting practice does not sanction such a deduction. As to the first point, it seems obvious that article 23 (m)–1 (h) does not purport to give an all-inclusive list of items deductible in computing net income from the property for the purpose of computing the maximum depletion deduction allowable. By the use of the abbreviation "etc." the respondent has left the way open to determine, as occasion arises, what items, in addition to those specified in the regulations shall be classified as "allowable deductions attributable to the mineral property." In this case he has made his determination that the interest item belongs in the category of deductions attributable to the oil property in respect of which depletion is claimed. The petitioner has the burden of establishing that such treatment deprives it of the reasonable allowance granted by section 23 (m). We are not convinced by the petitioner's argument that the respondent erred either in providing by regulation for the deduction of items attributable to the property or in his classifying the interest in dispute as such an item. By definition, to attribute is to "ascribe (something) as due and belonging" (Funk and Wagnalls); "to impute; to assign; to consider as belonging to" (Webster). The interest paid by this petitioner was for money borrowed and used to purchase the very property on which are located the wells the operation of which produces the income which it is now seeking to reduce by depletion deductions. Thus it seems to us entirely reasonable to attribute the interest as directly related to the mineral property producing the income. It is not attributable to any other property or to any operation other than the production of the oil which is the source of the income. The further provision of the regulations, that deductions not directly attributable to particular properties or processes shall be fairly allocated, supports our view. We find here no other property or process. The Commissioner's classification of the interest item as an allowable deduction attributable to the mineral property seems to us to be entirely proper.

As to the petitioner's argument that established accounting practice treats interest otherwise than the Commissioner has done here,

[2] The corresponding provision of Regulations 77 requiring the deduction of "development costs properly charged to expense" has been sustained in *F. H. E. Oil Co.* v. *Helvering*, 308 U. S. 104, following *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90, which sustained a slightly differently worded provision of Regulations 74.

it is perhaps sufficient to quote Mr. Justice Holmes in *Weiss* v. *Wiener*, 279 U. S. 333:

The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer.

But in order that there may be no misapprehension as to our understanding of the petitioner's views, we think it proper to point out that the basic assumption on which the argument rests is wrong. That assumption is that net income from the property for depletion purposes is synonymous with net operating profit. That was the view of the Circuit Court of Appeals for the Ninth Circuit in *Ambassador Petroleum Co.* v. *Commissioner*, 81 Fed. (2d) 474, cited by petitioner. But the Fifth Circuit Court disagreed with that holding, *Commissioner* v. *F. H. E. Oil Co.*, 102 Fed. (2d) 596, and it was affirmed by the Supreme Court, 308 U. S. 104. So this branch of the argument is left without support.

Finally, it is said there is a glaring inconsistency between the Commissioner's treatment of interest in this case and his treatment of interest in the regulations issued for administration of the Vinson Act, 48 Stat. 503, as amended. For the purpose of administering section 3 of the Vinson Act (Title 34, U. S. C. A. § 496) a number of treasury decisions have been issued. One of the more comprehensive ones, T. D. 4723, 1927–1 C. B. 519, 525, provides:

Among the items which shall not be included as a part of the cost of performing a contract or subcontract or considered in determining such cost are the following: * * * interest incurred or earned; bond discount or finance charges * * *.

The statute before us, says the petitioner, should be construed the same way as the Vinson Act, as both have the same objective, namely, the determination of income from a particular operation. On that analogy it is said that interest should not be taken into account in figuring the income in this case. This argument ignores the dissimilarity of the ultimate objectives of the two statutes. The statute under which the petitioner claims is purely a revenue producing enactment. The Vinson Act is not designed to be a producer of revenue. In its original form it had no provision in it to limit profits on Government contracts. The first amendment in this direction was offered from the floor of the House and was intended to remove the "menace of inordinate profits in the production of ships and munitions of war."[3] The Senate Naval Affairs Committee offered the amendment which later became section 3 of the Vinson Act, requiring payment of excess profits into the Treasury.[4] In view of the entirely

[3] Cong. Rec., 73d Cong. 2d sess., p. 1629.
[4] *Id.*, p. 3793. See *Foster Wheeler Corporation*, 40 B. T. A. 1, for a discussion of section 3 of the Vinson Act.

different purposes of the two statutes, we think there is no merit to the argument that because of a superficial analogy between the two, the treatment of interest under both must be the same. Analogies under but one statute have been held not determinative. In *Hughes Oil Co. v. Bass,* 62 Fed. (2d) 176, the taxpayer had wells drilled on its property under turnkey contracts and sought to take the cost as current deductions under provisions of the regulations that permitted the deduction of drilling costs under footage contracts but were silent as to the deduction of turnkey costs. The court said:

> * * * We are not concerned here with the question of whether the regulation invoked by analogy is reasonable or unreasonable. *Sterling Oil & Gas Co.* v. *Lucas* (D. C.) 51 F. (2d) 413; *Old Farmers' Oil Co.* v. *Commissioner,* 12 B. T. A. 203; *Ramsey* v. *Commissioner,* 26 B. T. A. 277. We have here only the question whether appellant has sustained the burden of showing that the action of the Commissioner is unreasonable and invalid.

The quoted holding is applicable here. The reasonableness of the regulations under the Vinson Act is not before us for decision and whether they are right or wrong they afford no basis for determining whether the respondent has allowed the correct amount of depletion in this case.

Moreover, the petitioner can claim nothing on any theory of liberality on the part of Congress in allowing depletion deductions. There was for a period of time, as noted in *Burnet* v. *Thompson Oil & Gas Co.,* 283 U. S. 301, an "increasing liberality" in the statutory depletion provisions. That case arose under the Revenue Act of 1918. Since that time the changes made have been toward the restriction of depletion allowances. Beginning with the 1921 Act, when discovery depletion was allowable, depletion deductions were limited to the amount of the net income from the property; the 1924 Act reduced the allowance to 50 percent of the net income. Discovery depletion on oil wells was omitted, beginning with the 1926 Act. In the 1932 Act the gross income was required to be computed by excluding royalties paid or incurred for purposes of figuring the 27½ percent. In thus limiting depletion, Congress has given us no ground for here attempting to give any unusually liberal interpretation in the petitioner's favor.

As the petitioner has not convinced us that the Commissioner's determination does not result in the contemplated statutory reasonable allowance for depletion, we adhere to the conclusion heretofore announced.

This report supersedes the memorandum findings of fact and opinion heretofore entered.

Reviewed by the Board.

*Decision will be entered for the respondent.*