## UNITED STATES v. DAKOTA-MONTANA OIL CO.

No. 434. Argued February 8, 1933.—Decided March 13, 1933.

*Assistant Attorney General Youngquist*, with whom *Solicitor General Thacher*, *Assistant Attorney General Rugg*, and *Messrs. Whitney North Seymour* and *Andrew D. Sharpe* were on the brief, for the United States.

*Mr. Herman J. Galloway*, with whom *Mr. Louis P. Donovan* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent, a North Dakota corporation, in making its tax return of income derived from its operation of oil wells in 1926, claimed a deduction from gross income of a depreciation allowance on account of the capitalized costs of preliminary development and drilling. The Commissioner refused to allow the deduction claimed, ruling that it was for depletion, not depreciation, and was therefore included in the statutory depletion allowance of 27½% of the gross income, which the respondent had also deducted. §§ 204 (c), 234 (a) (8), Revenue Act of 1926, c. 27, 44 Stat. 9, 16, 41. Having paid the correspondingly increased tax, respondent brought this suit in the Court of Claims to recover the excess. The court gave judgment for respondent, holding that the development and drilling costs were the proper subjects of a depreciation allowance which should have been made in addition to that for depletion. 59 F. (2d) 853. This Court granted certiorari to resolve a conflict of the decision below with that of the Circuit Court of Appeals for the Fourth Circuit in *Burnet v. Petroleum Exploration*, 61 F. (2d) 273.

The Revenue Act of 1926, like earlier acts,[1] provided generally that "in the case of . . . oil and gas wells," taxpayers should be allowed, as a deduction from gross income, "a reasonable allowance for depletion and for

---

[1] § 234 (a) (9), Revenue Act of 1918; § 234 (a) (9), Revenue Act of 1921; § 234 (a) (8), Revenue Act of 1924.

depreciation of improvements, according to the peculiar conditions in each case "; such allowance " in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary." § 234 (a) (8). The earlier acts provided that depletion should be allowed on the basis of cost unless the taxpayer was the discoverer of the well upon an unproven tract, in which case the basis was the " value of the property " at the time of the discovery or within 30 days thereafter.[2] See *Palmer* v. *Bender*, 287 U. S. 551. But the " discovery value " provision was eliminated from the act of 1926, which is applicable here, and the taxpayer was permitted to calculate depletion on the basis of cost alone, § 204 (c), or else to deduct an arbitrary allowance, fixed by the statute, without reference to cost or discovery value, at 27½% of gross income from the well.[3]

Articles 223 and 225 of Treasury Regulations 69, under the Revenue Act of 1926, were followed by the Commissioner in assessing the present tax. Article 223 purports to permit the taxpayer to choose whether to deduct costs of development and drilling as a development expense in the year in which they occur or else to charge them " to capital account returnable through depletion." In the

---

[2] § 234 (a) (9), Revenue Act of 1918; § 234 (a) (9), Revenue Act of 1921; § 204 (c), Revenue Act of 1924.

[3] " Sec. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—

" (2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

462

latter event, which is the case here, " in so far as such expense is represented by physical property, it may be taken into account in determining a reasonable allowance for depreciation " which, if the arbitrary deduction for depletion were claimed, would constitute an additional allowance. Article 225 limits the depreciation for which an allowance may be made to that of " physical property, such as machinery, tools, equipment, pipes, etc." We do not doubt that the effect of this language is to require the taxpayer to look to the depletion allowance, in this case 27½% of gross income, for a return of the costs of developing and drilling the well, which are involved here.

Respondent challenges the validity of the regulations thus applied as in conflict with § 234 (a) (8), which allows the deduction of a reasonable allowance " for depreciation of improvements " in addition to the deduction for depletion. It is urged that the drill hole is an " improvement " of the taxpayer's oil land and that no logical distinction in accounting practice can be made between the cost of this improvement and the cost of buildings and machinery placed on the property for the operation of the well, for which depreciation should admittedly be allowed.

The government argues that the well itself is not tangible physical property which wears out with use so as properly to be the subject of depreciation, and that in any event the regulations are based upon the practices of the oil industry and are within the requirements of § 234 (a) (8) that a reasonable allowance for depletion and depreciation of improvements be made in all cases under rules and regulations to be prescribed by the Treasury Department.

We do not stop to inquire whether, under correct accounting practice, an anticipated loss of a part of the capitalized cost of developing and drilling an oil well because of decreased utility of the well would be described or treated differently than wear and tear of the machinery

used in production, or whether an allowance for the former serves a purpose logically distinguishable from one for the latter. For the issue before us, whether the statute requires the former to be treated as depletion, is resolved by the history of the legislation and the administrative practice under it.

The Revenue Act of 1916 permitted the deduction of a reasonable allowance for the "exhaustion, wear and tear of property" used in a business or trade and in the case of oil and gas wells "a reasonable allowance for actual reduction in flow and production." § 12 (b) Second. The regulations authorized the deduction of an annual allowance for "depreciation" and, in the case of oil and gas wells, for "depletion" (Treasury Regulations 33, Arts. 159, 160, 162, 170), but ruled that no annual deduction for "obsolescence" was authorized by the statute in any case; such a loss it was provided, might only be deducted in the year when it became complete by abandonment of the property as no longer useful. (See Arts. 162, 178, 179 of Treasury Regulations 33; *Gambrinus Brewery Co.* v. *Anderson,* 282 U. S. 638, 643.) In defining these terms, therefore, the Department was apparently faced with the practical consequence that no annual deduction could be made in anticipation of those losses which it regarded as attributable to obsolescence, while such a deduction might be made for those which it attributed to depreciation or depletion. Depreciation was defined generally to include the wear and tear and exhaustion of property by use; and obsolescence, the loss in value of property due to the fact that because of changing conditions it has ceased to be useful.

Plainly, under these definitions the loss in value of the drill hole for an oil well, because of the approaching exhaustion of the oil in the ground, was not to be treated as depreciation. Article 170 of Regulations 33 neces-

sarily ruled that it was not to be treated as obsolescence by declaring that the purpose of the statutory provision relative to oil wells was to return, through the aggregate of annual depletion deductions, the taxpayer's capital investment in the oil, including "the cost of development (other than the cost of physical property incident to such development)." Article 170 thus contemplated that an annual deduction should be made for costs of development by including them in the cost of the oil in the ground for which a depletion allowance was authorized by § 12 (b), Second "for actual reduction in flow and production."

While the Revenue Acts which followed that of 1916 provided that taxpayers generally might deduct "a reasonable allowance for obsolescence" in addition to that "for the exhaustion, wear and tear of property used in the trade or business," [4] in each of them the section expressly applicable to oil and gas wells,[5] omitted the word obsolescence and provided, in terms, only for the deduction of an allowance for depletion and for depreciation of improvements. Whatever doubts this omission may have suggested as to the propriety of an allowance for obsolescence in the case of oil and gas wells, raising the same problem as that under the Act of 1916, the question whether an allowance should be made for development and drilling costs was set at rest, where cost was the basis of depletion and depreciation of improvements, by the express language of the Acts of 1918 and 1921, that the cost basis should include "costs of development not otherwise deducted." But the questions remained whether the allowance was to be treated as for depreciation or depletion, and more important, whether any allowance could be made for development costs when the basis of depletion

---

[4] § 234 (a) (7) of the Revenue Acts of 1918, 1921, 1924 and 1926.
[5] See note 1, *supra*.

was discovery value rather than cost.[6]  In answering these questions the Department adhered to and made explicit the position taken by it under the 1916 Act that development costs other than the cost of physical property incident to the development must be returned through the depletion allowance, but the regulations also provided expressly that the cost of "physical property such as machinery, tools, equipment, pipes, etc.," should be returned by an annual allowance for depreciation.  (Arts. 223, 225 of Treasury Regulations 45 under the Revenue Act of 1918.)  The distinction thus taken was continued in the regulations under the Acts of 1921, 1924 and 1926,[7] although beginning with that of 1924 the express declaration of the statute, already noted, that the cost basis for depletion and depreciation of improvements should include costs of development was eliminated, leaving the broad provision that a reasonable allowance should in all cases be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary.

Doubts arising because of the silence of the Revenue Acts of 1918 and later years as to whether costs of development and drilling were to be included in depletion when based on discovery value, were resolved by the regulations already noted and by the addition of another. Article 220 (a) (3) of Treasury Regulations 45 provided that "the 'property' which may be valued after discovery is the 'well.' For the purposes of these sections the 'well' is the drill hole, the surface necessary for the

---

[6] The discoverer of an oil well upon an unproven tract was permitted, for the first time by § 234 (a) (9) of the Revenue Act of 1918, to calculate the allowance for depletion upon the basis of the value of the "property" at the time of the discovery or within thirty days thereafter. See note 2, *supra*. The statute was silent as to the inclusion of development costs.

[7] Arts. 223, 225, of Treasury Regulations 62, 69; Arts. 225, 227, of Treasury Regulations 65.

drilling and operation of the well, the oil or gas content of the particular sand, zone or reservoir . . . in which the discovery was made by the drilling, and from which the production is drawn." By including the drill hole in the property to be valued for depletion under § 234 (a) (9); this article necessarily carried forward the distinction taken under the 1916 Act between drilling costs, subject to depletion allowance, and costs of machinery, tools and equipment, subject to allowance for depreciation. Sections 234 (a) (9) of the Revenue Act of 1921 and § 204 (c) of the Act of 1924 continued the provisions of the 1918 Act, and this regulation remained unchanged.[8] It was eliminated under the 1926 Act, being no longer necessary, as the statute omitted the "discovery value" provision and substituted the arbitrary percentage allowance for depletion.[9]

Thus the Acts of 1918, 1921 and 1924 were consistently construed by the regulations to permit a depletion, but not a depreciation, allowance for the costs of development work and drilling, which were treated for this purpose either as a part of the cost or an addition to the discovery value of the oil in the ground. The administrative construction must be deemed to have received legislative approval by the reënactment of the statutory provision, without material change. *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299; *Brewster* v. *Gage,* 280 U. S. 327, 337.

Respondent argues that whatever effect may be attributed to earlier reënactments, that of 1926, which is applicable here, is without force because § 204 of that Act abandoned discovery value as the basis of depletion and permitted the taxpayer to abandon cost and substitute a fixed allowance of $27\frac{1}{2}\%$ of gross income from the well. We think the contention unfounded and that, on

---

[8] Arts. 220 (a) (3) of Treasury Regulations 62 and 222 (3) of Treasury Regulations 65.

[9] See Senate Report No. 52, 69th Congress, 1st Session, pp. 17, 18.

the contrary, what was included in the reasonable allow-ance for depletion by the established construction of the earlier acts gave significant content to the word as used in the Act of 1926. There is no ground for supposing that Congress, by providing a new method for computing the allowance for depletion intended to break with the past and narrow the function of that allowance. The reasonable inference is that it did not and that depletion includes under the 1926 Act precisely what it included under the earlier acts. The regulations under the 1926 Act so ruled, as has been shown, by continuing the provisions of earlier regulations under which costs of development and drilling were returnable by the depletion allowance and not by an additional allowance for depreciation.[10]

It is true that the Board of Tax Appeals in construing the 1924 and 1926 Acts has held that capitalized drilling costs are subject to a depreciation rather than a depletion allowance. Jergins Trust Co. v. Commissioner, 22 B. T. A. 551; Ziegler v. Commissioner, 23 B. T. A. 1091; P. M. K. Petroleum Co. v. Commissioner, 24 B. T. A. 360. But these cases were all decided after the enactment of the 1926 Act and did not consider the administrative and legislative history, which we think decisive.

*Reversed.*

---

[10] Compare also Treasury Decision 4333, Internal Revenue Bulletin XI, April 11, 1932, No. 15, pp. 2, 3.