### RAMSEY v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 764.

Circuit Court of Appeals, Tenth Circuit.
July 26, 1933.

Charles H. Garnett, of Oklahoma City, Okl., for petitioner.

Maxwell M. Mahany, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Sewall Key, A. H. Conner, and William H. Riley, Jr., Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

From 1922 until 1926 the petitioner was engaged in developing oil leases. Wells were drilled by a contractor upon a footage basis, the petitioner furnishing the equipment and supervision. The amounts paid the contractor for drilling, plus certain items for labor, trucking, cementing, fuel, repairs, management, depreciation, and taxes (exclusive of derricks, boilers, casing and equipment) were deducted each year from his income, as development expense, in accordance with the option given him by Reg. 69, Art. 223, set out in the margin.[1] Recoverable items of development costs, such as the derrick, casing and boilers, are not herein involved. In 1926 he sold the properties and in returning the profit from that sale, he added the expenditures theretofore deducted as expenses of operation, to the cost of the leases sold. The Commissioner declined to permit this double deduction for the same costs, holding that since the petitioner had exercised his option to treat these items as expenses and taken credit therefor, he could not later retroactively elect to treat them as capital expenditures. The Board of Tax Appeals affirmed and we are asked to review that determination.

Counsel for petitioner very fairly says in his brief that if the regulation is construed as covering these expenditures and is valid as so construed, the decision should be affirmed. There being no question of the constitutional power of Congress to permit a deduction of such drilling costs from current income, we have only a question of statutory construction. The underlying provision for deduction from income is section 215 of the Revenue Act 1921 (42 Stat. 227, 242), and section 215, Revenue Acts 1924 and 1926 (26 USCA § 956), which runs in part:

"That in computing net income no deduction shall in any case be allowed in respect of * * *

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

Reg. 62, Art. 293, is the companion of this statute, and the first sentence is: "Amounts paid for increasing the capital value or for restoring the depreciated value of property are not deductible from gross income."

The position of petitioner is that the regulation quoted in the margin, if construed to cover these expenses, flies directly in the face of this statutory prohibition and is therefore invalid; that there was therefore no legal au-

[1] "Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as a development expense or charged to capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as a development expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells. An election once made under the provisions of this article will control the taxpayer's returns for all subsequent years."

A similar regulation was promulgated under statutes of other years. See Art. 223, Reg. 45 (1918); Art. 223, Reg. 62 (1921); Art. 225, Reg. 65 (1924); Art. 243, Reg. 74 (1928). These were restated and amplified in Tr. Dec. 4333, in June, 1932.

thority for the petitioner deducting these sums as development expenses during the years, and no legal impediment to his now charging them to capital account.

 The office of an administrative regulation has been many times defined. A revenue law may not be altered or amended by regulation, Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267, nor go beyond what Congress has authorized, Utah Power & Light Co. v. United States, 243 U. S. 389, 37 S. Ct. 387, 61 L. Ed. 791. A regulation may make explicit what is general and clear up uncertainty. United States v. Dakota-Montana Oil Co., 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893.

 The first question for determination is, Does the quoted regulation purport to cover those expenses, which it has been noted, do not include the cost of the derrick, casing, boilers, or other recoverable equipment? Of this we have no doubt. While the regulation uses the word "incidental" it is followed by the explanatory words "wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property"; this language includes the very items here sought to be capitalized, and doubtless are intended to cover all drilling costs except derricks, casing, boilers and other equipment with salvage value. Tr. Dec. 4333, promulgated to restate the administrative practice of long standing without changing administrative policy, specifically provides that costs incurred by contracts for drilling on a footage basis are within the regulation. The sentence, "An election once made under the provisions of this article will control the taxpayer's returns for all subsequent years," is unambiguous; it is conceded that petitioner once elected to treat these costs as operating expenses. It would require a distortion of unequivocal language to hold that the regulation does not cover this case. The question is squarely presented therefore whether the regulation may permit the irrecoverable costs of drilling oil wells to be classed as an expense of operation rather than as a "permanent improvement or betterment."

 Whether an oil well is a permanent improvement is at least a debatable question. The incidental costs here involved are irretrievably gone when the well is finished, whether it be a dry hole or a producer. A dry hole is neither an improvement nor a betterment; neither is a producer after the oil is exhausted. The truth is that the hole upon which the money is expended is simply a means of reaching the oil sands, and it is the oil which increases the value of the property; the hole is of value only if oil is found, and then only as long as the sands will produce. A producing field is of more value than a nonproducing one, partly because the expenses of reaching the sands have been incurred, but largely because the presence of oil has been proven. While Dictionary definitions are helpful, they do not exclude an examination of the context to ascertain the purpose of the statute, nor forbid an inquiry into administrative interpretation as an aid in construction of doubtful words or passages. A priori, therefore, we are of the opinion that the holes through which the oil is recovered are not so conclusively "permanent improvements or betterments" as to preclude a regulation permitting the deduction of irrecoverable expenses of drilling them as ordinary expenses incurred in carrying on a trade or business, allowed by section 214 (a) of the acts in question. Revenue Act 1921, § 214 (a); Revenue Acts 1924 and 1926, § 214 (a), 26 USCA § 955 (a).

 This conclusion is strongly fortified by the fact that this regulation has been in existence for many years; Congress has repeatedly amended the revenue laws while this regulation was in full force and effect, and no effort has been made to do away with it. This is almost conclusive proof that Congress was satisfied with the construction put upon its language in the earlier acts; by repeated reenactments, Congress has ratified and approved this interpretation. For many years the oil industry has availed itself of this regulation; the Commissioner has acted under it; the Board of Tax Appeals and the Courts have recognized its existence and validity. Under such circumstances, its invalidity must be clear before courts would be justified in holding that taxes have been illegally assessed and collected throughout the years, particularly when the regulation accomplishes a result that is essentially fair to both the taxpayer and the government.

 That a regulation may resolve a doubt as to the proper classification of drilling costs, and that the administrative construction embodied in the regulation must be deemed to have received legislative approval by reenactment of the statute, see United States v. Dakota-Montana Oil Company, 288 U. S. 459, 53 S. Ct. 435, 77 L. Ed. 893; Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318. And cf. Massachusetts Mut. Life Ins. Co. v. United States, 288 U. S. 269, 53 S. Ct. 337, 77 L. Ed. 739. In Brewster v. Gage, 280 U. S. 327, 336, 50 S. Ct. 115, 117,

74 L. Ed. 457, the Court said: "These regulations were prepared by the Department charged with the duty of enforcing the acts. The rule so established is reasonable and does no violence to the letter or spirit of the provisions construed. A reversal of that construction would be likely to produce inconvenience and result in inequality. It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Logan v. Davis, 233 U. S. 613, 627, 34 S. Ct. 685, 58 L. Ed. 1121; Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297; Swendig v. Washington Water Power Co., 265 U. S. 322, 331, 44 S. Ct. 496, 68 L. Ed. 1036."

Many cases are cited by counsel in which this particular regulation was involved. Only one deals with the validity of the regulation, Sterling Oil & Gas Co. v. Lucas (D. C. Ky.) 51 F.(2d) 413, in which Judge Dawson held it to be valid, and the Circuit Court of Appeals affirmed, 62 F.(2d) 951, assuming, without deciding, its validity. In Bliss v. Commissioner (C. C. A. 5) 57 F.(2d) 984, the cost of drilling dry holes was held deductible as a business expense, the court holding that dry holes did not enrich anybody. In Island Petroleum Co. v. Commissioner (C. C. A. 4) 57 F.(2d) 992, the court held the regulation not applicable, but its validity was recognized. Other cases involve "turn-key" contracts, that is, where a contractor erects the derrick, drills and cases the well, and turns it over fully equipped. Hughes Oil Co. v. Bass (C. C. A. 5) 62 F.(2d) 176; Old Farmers Oil Co. v. Commissioner, 12 B. T. A. 203. The contract price of such a job, including recoverable equipment, was held not to be within the incidental costs covered by the regulation. These cases do not hold the regulation invalid; they hold the taxpayer's proof did not call for its application. It is not a question whether the well is drilled under contract; it is a question whether the labor costs have been segregated from the equipment expense. Other cases present the question, not present here, whether if such costs are capitalized, return thereof should be had through depreciation or depletion. A. T. Jergins Trust v. Commissioner, 22 B. T. A. 551, Id., 288 U. S. 508, 53 S. Ct. 439; Ziegler v. Commissioner, 23 B. T. A. 1091; P-M-K Petroleum Co. v. Commissioner, 24 B. T. A. 360; United States v. Dakota-Montana Oil Company, supra; Petroleum Exploration v. Burnet, Commissioner, 288 U. S. 467, 53 S. Ct. 439, 77 L. Ed.

898. In Robertson v. Commissioner, 28 B. T. A. ——, the Board of Tax Appeals enforced this regulation at the instance of a taxpayer. While none of these cases bears directly upon the point, they have this significance: This regulation has been before the courts repeatedly and has uniformly been treated as an integral part of our taxing laws.

The industry, the Commissioner, the Board of Tax Appeals, and the courts for years have acted upon the assumption that this regulation is valid. It is a fair solution of a debatable question. If it is to be changed at this late day, it should be done by Congress and not the courts.

The decision of the Board of Tax Appeals is affirmed.