**F. H. E. OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**FLEMING–KIMBELL CORPORATION v. SAME.**

**No. 11167.**

Circuit Court of Appeals, Fifth Circuit.

March 6, 1945.

Rehearing Denied May 4, 1945.

Harry C. Weeks, of Fort Worth, Tex., for petitioners.

Warren F. Wattles and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

This consolidated case concerns income taxes for the years 1939 and 1940, and particularly the parts of Art. 23(m) (16) of Regulation 101 and Regulation 103 applicable in those years, reading as follows: "(1) * * * All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident and necessary for the drilling of wells and the preparation of wells for the production of oil or gas may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. * * * (2) In addition to the foregoing option the cost of drilling nonproductive wells at the option of the taxpayer may be deducted from gross income for the year

in which the taxpayer completes such a well or be charged to capital account returnable through depletion as in the case of productive wells." A number of wells were sunk by the taxpayers in each of the tax years, all of them productive except one. The taxpayers, in accordance with their prior practice, sought to deduct as expense the "intangible costs" defined in the above quotation, but the Commissioner disallowed the deductions, holding that the entire cost of the well was in each instance a capital investment. The Tax Court upheld the Commissioner. Four judges dissented, agreeing with the majority that the costs of drilling were capital expenditures, but thinking the Regulations clearly gave the taxpayers the option they claimed. See 3 T.C. 13, where the facts are fully stated.

For the purpose of this review it is enough to say that the productive wells were drilled on leases made or assigned to the taxpayers on nominal considerations, without any *obligation* on their part to drill, but providing that unless a well should be made within a limited number of days their rights and interests should cease. The unproductive well was made under an assignment of a lease with retained royalties, made pursuant to a contract which bound the taxpayer within thirty days to commence and prosecute with diligence a test well to a stated depth. The assignment stood good, although the test well failed.

A regulation giving the option which is in dispute has existed, with increasing complexity, since 1918, and has recently been broadened. The legislative mind of the Treasury Department seems determined to maintain the option. The administrative mind, represented by the Commissioner and his lawyers, and supported generally by the courts, is bent on whittling it away. The question of its validity has seldom been raised, the taxpayers not wishing to attack it because it favors them, and the Commissioner not being in position to repudiate the regulation of his own department. The judges have not thought it their business to raise the question; but if the option be in truth contrary to the revenue statutes, it is void, and it is the duty of the judges to declare and uphold the law, and disregard the regulation.

The option to treat as expense what is in fact, as all of the judges of the Tax Court agree, a capital investment, conflicts with the law in two important respects.

First; the Congress, repeating what has been in the statutes from the beginning of income taxation, provides in Section 23(a) of the Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 23(a), for the deduction of business expenses and defines them. Section 24 (a) provides: "No deduction shall *in any case* be allowed in respect of * * * (2) Any amount paid out for new buildings or *for permanent improvements or betterments made to increase the value of any property or estate.*" (Emphasis added.) Under Section 23 (*l*) and (m) the exhaustion of capital investments is to be cared for by depreciation and depletion allowances from year to year. Second; The Congress has provided specially for depletion and depreciation (which are both allowances for wasting capital investments) in *the case of oil and gas wells* in Section 114(b) (3), giving the taxpayer a flat depletion allowance of 27½ per cent of the gross income from the property, but not less than if computed by the usual formulas. This depletion allowance includes and returns *the investment in the well* as well as the oil and gas in place, and when the percentage allowance is taken there can be no additional allowance by way of depreciation of the well. United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893. But this regulation purports to allow the intangible drilling cost to be deducted as *an expense,* and when oil and gas are produced the full 27½ per cent allowance may again be taken under the statute, giving the driller of successful gas or oil wells *a double deduction* not permitted by Congress.

The regulation is supposed to be authorized by Section 23(m), "In the case of mines, oil and gas wells, other natural deposits, or timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary." The power given is to regulate depletion and depreciation allowances; not to regulate expense deductions, or to give options or double deductions. Early regulations determined that an oil well is so intimately a part of the oil reserve which it reaches as to be a part of it, not capable of removal, useful only to get the oil, and perishing in value as the oil is exhausted; so that its cost ought to be returned by depletion along

with the cost of the oil, and not by ordinary depreciation based on the physical deterioration of the structure. Such regulation was held to be valid in United States v. Dakota-Montana Oil Co., supra, and that it was adopted into the percentage measure of depletion when Congress provided that measure in the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 145 et seq. The court in that case, 288 U. S. at page 461, 53 S.Ct. at page 436, 77 L.Ed. 893, took note of the option in controversy in these words: "Article 223 (Regulation 69) purports to permit the taxpayer to choose whether to deduct costs of development and drilling as a development expense in the year in which they occur or else to charge them 'to capital account returnable through depletion.' In the latter event, which is the case here," etc. Nothing was said as to the validity of the other choice, and so far as we have discovered, nothing has ever been said by the Supreme Court.[1]

In this court the option given by the regulation has never been attacked, and has generally been accepted as valid, though almost every effort to narrow it has succeeded. In Commissioner of Internal Revenue v. Rowan Drilling Co., 5 Cir., 130 F. 2d 62, the double deduction spoken of above occurred. The taxpayer drilled wells for an interest in the oil, and took an expense deduction for the intangible drilling costs. In a later year the 27½ per cent depletion allowance was taken. He had recovered already the entire intangible drilling costs, but was held entitled to the percentage depletion for all years to come as though he had not. The court said the allowance of the expense deduction was wrong, but could not be corrected in the pending case.

In the whittling down of the option, although given in most comprehensive words, the Commissioner has been sustained by this court in denying the right to treat such drilling costs as expense when the taxpayer contracts with another for a completed well for a fixed price. J. K. Hughes Oil Co. v. Bass, 5 Cir., 62 F.2d 176. The taxpayer was said thereby to buy a well, a capital investment. But the Commissioner was held to his regulation when the contract to drill the well was on a "cost plus" basis, in Commissioner of Internal Revenue v. Ambrose, 127 F.2d 47, no one attacking the regulation. A similar result was reached in Retsall Drilling Co. v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 355. In Hardesty v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 843, it was held the regulation did not apply to every taxpayer who drills an oil well, but only to one developing his own oil property; and where one having no interest in the oil property drilled a well in consideration of obtaining an interest in the well and the property, he made a capital investment and could deduct no part of the cost as expense. Again in Hunt v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 697, the Commissioner ruled, and this court agreed, that where oil interests were acquired under contracts to drill wells, the driller made capital investments and could have no option to deduct any costs as expenses; but where he already had a half interest and thus acquired an additional half he could deduct a proportional part of the intangible drilling costs. One judge then for the first time argued that the true reason for disallowing expense deductions in the Hardesty and Hunt cases was that the part of the regulation giving the option was void, since the making of a producing well by one who owned the oil reserve, or became entitled thereby to an interest in it, was a capital investment returnable only through depletion under the statute.

■ In the present case the Commissioner has again narrowed the application of the option by asserting that "the taxpayer" does not include one who owns an interest in the oil property, and is not bound to drill, but who unless he does so in a limited time will, by the terms of his lease or assignment, lose his interest. The majority opinion of the Tax Court holds that he who thus drills to keep his interest is in the same case as is he who drills to obtain an interest, and that in drilling he makes a

[1] In F. H. E. Oil Co. v. Helvering, 308 U.S. 104, 60 S.Ct. 26, 84 L.Ed. 109, the taxpayer had elected to deduct drilling costs as expense, and had been allowed to do so. No one questioned the propriety of the deduction. The controversy was over another part of the Regulation which required that such an expense deduction would apply in ascertaining the 50 percent of net income to which the statute limited the percentage deduction for depletion. That part of the regulation was upheld as an interpretation of the depletion statute, and resolving an ambiguity in it as to the meaning of net income. No opinion was asked or expressed as to the validity of the expense option.

capital investment no part of which can be called expense. The minority opinion points out that the applicable regulation purports to give the option to every taxpayer who drills on his own account an oil and gas well, saying nothing about when or on what conditions he got or is to get his title.

The minority is right as to what the Regulation says. The majority is right in holding that the Regulation in giving an optional expense deduction cannot prevail against the fact that a capital investment, an "improvement or betterment of the estate or property" has been made, for by the statute the cost of such cannot be deducted as expense, but can be recouped only by annual allowances for depletion or depreciation. The Hardesty case and *the main part* of the Hunt case are similarly right. The taxpayers before us, though it be allowed that they owned an interest in the oil property when they drilled (but only for a few days unless they drilled) and though they did not have to drill by force of any contract, still in drilling were improving and bettering the property which they had and at the same time perfecting their title to it. For both reasons they were making a capital expenditure by drilling, as much so as if making any other permanent structure. The cost, none of it, was an expense of business, any more than similar costs in building a house would be. As applied to such an outlay the option is contrary to law.[2]

■■ The only case in an appellate court broadly upholding the option to which we have been cited is Ramsey v. Commissioner of Internal Revenue, 10 Cir., 66 F.2d 316, reaffirmed by the same court, though the option was denied application, in Grison Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 96 F.2d 125. In the Ramsey case the taxpayer owned his leases outright and voluntarily drilled on them through contractors on a footage basis of payment. He was allowed to expense his intangible drilling costs under the then regulation. In a later year he sold the leases and in returning the profit sought to reduce it by including in his cost basis the entire cost of the well. Of course he should not have been allowed, on general principles, to include as cost what he had been permitted to treat as expense, but the court thought

the validity of the option in the regulation should be determined, and upheld it. The first argument put forward was: "Whether an oil well is a permanent improvement is at least a debatable question. * * * The hole is of value only if oil is found, and then only as long as the sands will produce." It seems to us clear that a producing well is a permanent improvement. It costs more in many cases than the land in which it is constructed, and multiplies many times the value of the oil it reaches. It is permanent, because not intended to be removed, and indeed incapable of removal as a whole. It is not temporary, though its useful life is limited. Many buildings put up for special purposes have a useful life less than their physical life. That fact only increases the proper rate of annual depreciation or depletion. We are not impressed by this argument. The other argument was that the regulation had long existed and the revenue statutes had been reenacted with their relevant parts substantially unchanged. This argument is of course good where a regulation resolves statutory ambiguities or uncertainties, but is of no force at all when a regulation is contrary to the terms of the statute. It is not the business of Congress to review and revise regulations. The Congress in every Revenue Act has defined expenses and stated plainly what could not be treated as expense; and has provided for oil and gas wells modes of depletion for returning the capital invested in them. If these provisions contravene prior regulations, instead of approving the regulations they annul them. The Ramsey case indeed dealt with a regulation prior to 1926, and before the Congress first enacted the flat percentage depletion for oil and gas wells, which is incompatible with expensing drilling costs, because the whole cost of the well is supposed to be covered in the percentage depletion, as settled by the Dakota-Montana Oil Co. case, supra.

In the special circumstances here the Tax Court has unanimously held as a matter of fact that the wells were drilled under such circumstances as that the drillers were making capital investments. The evidence and the law supports that finding. The statute overrides the Regulations and forbids deducting any of the drilling costs as expenses, providing instead that they be

---

[2] Hogan v. Commissioner of Internal Revenue, 141 F.2d 92, and Choate v. Commissioner, 323 U.S. ——, 65 S.Ct. 469, deal with equipment, and not with the well itself, or the intangible cost of drilling it.

absorbed by depletion. Whether the cost of any unproductive well, after abandoning it and salvaging what is salvable, can be treated as a realized loss is not here in question.

Judgment affirmed.

WALLER, Circuit Judge, concurring in the result.