**HARPER OIL COMPANY, a corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 202–68.

United States Court of Appeals, Tenth Circuit.

April 9, 1970.

Rehearing Denied May 13, 1970.

Coleman Hayes, Oklahoma City, Okl. (T. Murray Robinson, Oklahoma City, Okl., was with him on the brief), for appellee.

Thomas L. Stapleton, Atty., Department of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson and Grant W. Wiprud, Attys., Department of Justice, Washington, D. C., were with him on the brief; B. Andrew Potter, U. S. Atty., and Givens L. Adams, Asst. U. S. Atty., Oklahoma City, Okl., of counsel), for appellant.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BLACK-MUN, Circuit Judges [*].

BLACKMUN, Circuit Judge.

We are concerned here with the issue whether a taxpayer's cost of surface-casing for a producing Oklahoma oil well may be expensed, pursuant to § 263(c) [1] of the Internal Revenue Code of 1954 and the implementing regulation, or whether that cost must be capitalized and recovered only through depreciation. The taxpayer expresses the issue with a slightly different, but entirely appropriate, emphasis: "The single issue involved in this appeal is whether or not the option to expense drilling costs applies to non-salvageable surface-casing."

The taxpayer, Harper Oil Company, sued for refund of income taxes it paid for its fiscal years ended September 30, 1963, 1964 and 1965. The case was tried to the court sitting without a jury. Harper obtained judgment for $47,091.-45. The government appeals.

Three issues were tried in the District Court. The first is the one with which we are concerned here. The second was decided in part for Harper and in part for the government. The third was decided in its entirety against Harper. Neither side appealed with respect to these last two issues. Only the first is before us and it, of course, concerns an aggregate amount of tax, for the three years in question, somewhat less than the judgment Harper obtained.

The basic facts are not in dispute. Harper is an Oklahoma corporation engaged in the construction and operation of oil drilling and production facilities. During the tax years in question Harper incurred costs for so-called "surface-casing" for wells it drilled in Oklahoma. These are the costs in controversy here.

An oil well is cased. Production casing is the series of steel pipe lengths, screwed or welded together and called the "string," through which the oil flows to the surface. Surface-casing is not the same as the production string. It usually is an outer casing or jacket of the string. One purpose of surface-casing is to prevent contamination of fresh water strata which have been penetrated and to seal off fluids from the hole. An-

---

[*] All of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1] "(c) Intangible drilling and development costs in the case of oil and gas wells.— Notwithstanding subsection (a), regulations shall be prescribed by the Secretary or his delegate under this subtitle corresponding to the regulations which granted the option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells and which were recognized and approved by the Congress in House Concurrent Resolution 50, Seventy-ninth Congress."

other purpose is to prevent caving at the surface. Surface-casing is a tubular product lighter than the string. Sometimes, however, the production string itself serves as the surface-casing. Surface-casing may go down a thousand feet or more.

The Oklahoma Corporation Commission, by regulations, requires surface-casing in the presence of fresh water strata and then forbids its removal.[2]

It was stipulated at pretrial that the cost to Harper of recovering the surface-casing would exceed any resale or salvage value.

In its returns for the tax years in question Harper took the position that it was entitled to expense the cost of the surface-casing cemented into place. On audit, the Commissioner of Internal Revenue ruled that these costs could not be expensed and that they must be capitalized. The resulting deficiencies were paid and claims for refund were duly filed.

In a pretrial interrogatory Harper asserted that the costs in question were to be expensed because there was no salvage value in the surface-casing. The government then filed a motion for summary judgment on that issue on the ground that as a matter of law the costs must be capitalized. The District Court overruled that motion and in doing so observed that the question "is easily stated but decidedly difficult to answer." After trial on all issues the court adhered to its ruling on the motion, described the issue as "close," and entered judgment accordingly.

In its memorandum denying the government's motion for summary judgment and in its comments at the close of the trial, the court placed emphasis on the absence of salvage value. It expressed

doubt that the Commissioner in his rulings ever intended to deny the option to the costs of Oklahoma surface-casing which could never be removed or have salvage value. It further stated that if it misconstrued the Commissioner's ruling in this respect, it disagreed with that ruling.

■ *The statutory plan.* Section 263(a) states the general rule that no deduction shall be allowed for an amount paid out "for permanent improvements or betterments made to increase the value of any property or estate." It follows that a cost incurred for a permanent improvement or a betterment of that kind is a capital item and, if it qualifies, is subject to eventual recovery by way of the depreciation deduction allowed by § 167.

We would hesitate to state categorically that the costs of drilling and developing an oil well do or do not qualify as costs "for permanent improvements or betterments" within the meaning of § 263(a). Over 35 years ago this court said, "Whether an oil well is a permanent improvement is at least a debatable question." Ramsey v. Commissioner of Internal Revenue, 66 F.2d 316, 318 (10 Cir. 1933), cert. denied, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581. Later, however, and in contrast, the Fifth Circuit said, "It seems to us clear that a producing well is a permanent improvement. * * * We are not impressed by this [the Tenth Circuit's] argument." F. H. E. Oil Co. v. Commissioner of Internal Revenue, 147 F.2d 1002, 1005 (5 Cir. 1945).

In any event, § 263(c) provides an exception to the general rule of § 263(a) in that it grants the taxpayer the option to expense certain "intangible drilling and development costs in the case of oil and gas wells." The costs are those pre-

---

**2.** "206(c) Surface-casing.

"Suitable and sufficient surface-casing shall be run and cemented to a depth not less than fifty (50) feet below all fresh water strata encountered in the well and in a manner that will protect such fresh water strata from contamination resulting from the drilling or opera-

tions of the well. Sufficient cement shall be used to fill the annular space behind the surface-casing from the base thereof to the surface of the ground."

"601(d)

"In order to protect the fresh water strata, no surface-casing shall be pulled from any well."

scribed by regulations corresponding to the regulations which granted the option to those costs recognized and approved by the Congress in House Concurrent Resolution 50 of the First Session of the 79th Congress.

The Concurrent Resolution was adopted in 1945. We quote it in the margin.[3] Reg. 111 § 29.23(m)–16, issued under the 1939 Code and applicable to years beginning after December 31, 1941, and specifically approved by the Congress in the Concurrent Resolution, had granted an option to expense certain costs. Its subsection (b) (3), however, denied that option to certain "capital items":

"(3) Nonoptional items distinguished:

"(i) Capital items: The option with respect to intangible drilling and development costs does not apply to expenditures by which the taxpayer acquires tangible property ordinarily considered as having a salvage value. Examples of such items are the costs of the actual materials in those structures which are constructed in the wells and on the property, and the cost of drilling tools, pipe, *casing*, tubing, tanks, engines, boilers, machines, etc. The option does not apply to any expenditure for wages, fuel, repairs, hauling, supplies, etc., in connection with equipment, facilities, or structures, not incident to or necessary for the drilling of wells, such as structures for storing or treating oil or gas. These are capital items and are returnable through depreciation" (emphasis supplied).

This quoted portion of Reg. 111 has come down verbatim to the regulations currently in force under the 1954 Code.

Treas.Reg. § 1.612–4(c) (1) (1965). The reference to "casing" goes back to T.D. 4333, XI–1 C.B. 31, 32 (1932).

*The history of the option.* The option to expense intangible drilling and development costs in the case of oil and gas wells, although long available, was not clearly authorized by statute until the enactment of the 1954 Code. The option's history is a curious one, indeed. See C. Breeding & A. Burton, Income Taxation of Oil and Gas Production ¶¶ 10.01 and 10.02, for an informative review. See also 4 Mertens Law of Federal Income Taxation §§ 24.48a and 24.-48b (1966). We mention certain aspects:

1. The Revenue Acts of 1918 and 1921, in their respective §§ 214(a) (10) and 234(a) (9), allowed a deduction for depletion and for depreciation "according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted." (The phrase beginning with the word "based" was eliminated in the corresponding §§ 214(a) (9) and 234(a) (8) of the Revenue Act of 1924 and did not reappear in subsequent acts.) One was able to make the argument that, by implication, intangible development costs were deductible under the last portion of the above quotation from the 1918 and 1921 Acts. Irrespective of what may have been regarded as the statutory foundation at that time, the option was made available in 1918 when the revision of Reg. 33 appeared with its article 170. It was carried over to Reg. 45, art. 223, and Reg. 62, art. 223, issued respectively under the Revenue Acts of 1918 and 1921. It also appeared in Reg. 65, art. 225, issued under the Revenue Act of

3. *"Resolved by the House of Representatives* (the Senate concurring), That in the public interest Congress hereby declares that by the re-enactment, in the various revenue Acts beginning with the Revenue Act of 1918, of the provisions of section 23 of the Internal Revenue Code and of the corresponding sections of prior revenue Acts allowing a deduction for ordinary and necessary business expenses, and by the enactment of the provisions of

section 711(b) (1) of the Internal Revenue Code relating to the deduction for intangible drilling and development costs in the case of oil and gas wells, the Congress has recognized and approved the provisions of section 29.23(m)–16 of Treasury Regulations 111 and the corresponding provisions of prior Treasury Regulations granting *the option to deduct* as expenses such tangible drilling and development costs."

1924, despite the above noted elimination of language, and has been covered by regulation ever since.

2. But this apparent availability did not always mean acceptance without something more specific by way of statute. The validity of the regulation, with respect to the 1918 Act, was questioned in Old Farmers Oil Co., 12 B.T.A. 203, 217–218 (1928), but it proved unnecessary for the Board to pass on the issue in that case. Three years later the grant of the option by regulation was specifically upheld in Sterling Oil & Gas Co. v. Lucas, 51 F.2d 413 (W.D.Ky.1931), a case which also concerned the 1918 Act. The court said, p. 416, that it was of the impression that it would be "a sounder accounting practice" to classify intangible development expenses as invested capital but it went on to observe that "the matter is a debatable one" and "sufficiently debatable * * * to justify the regulation" and the option it bestowed. The court also felt that there was legislative sanction in the enactment of successive Revenue Acts which did not change the administrative ruling. The Sixth Circuit affirmed, 62 F.2d 951 (6 Cir. 1933), but with the observations, p. 952, that the authority to issue the regulation was not then challenged by the appellant and that the court was not deciding that question.

3. At about the same time this court, in Ramsey v. Commissioner of Internal Revenue, *supra*, 66 F.2d 316, cert. denied, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581, held the option to be valid. That case came here in a peculiar posture, for the taxpayer had exercised the option and expensed costs in prior taxable years. In 1926 he sold the property and in computing gain on the sale sought to add back the deducted expenses to the cost of the leases sold and thus to reduce his gain. The Commissioner understandably refused to allow this double benefit. The Board of Tax Appeals upheld the regulation and affirmed, 26 B.T.A. 277, 280 (1932), and this court, in its turn, affirmed the Board. Judge McDermott, in speaking for the court, observed, 66 F.

2d at 318–319, that "the hole is of value only if oil is found, and then only as long as the sands will produce"; that "the holes through which the oil is recovered are not so conclusively 'permanent improvements or betterments' as to preclude a regulation" permitting expensing; that the regulation had been in existence for many years; that Congress in amending the revenue laws made no effort to do away with the regulation; that invalidity of a regulation must be clear, particularly when it accomplishes a result essentially fair to both the taxpayer and the government, before a court will set it aside; that the regulation "is a fair solution of a debatable question"; and that if it is to be changed, the change should be effected by Congress. In Grison Oil Corp. v. Commissioner of Internal Revenue, 96 F.2d 125, 126 (10 Cir. 1938), cert. denied, 305 U.S. 613, 59 S.Ct. 73, 83 L.Ed. 391, this court said, "The validity of the regulation is not open to question."

4. In many cases the regulation was applied without challenge. See, for example, Commissioner of Internal Revenue v. Ambrose, 127 F.2d 47 (5 Cir. 1942). In others its validity was assumed for purposes of the appellate review. See Estate of Goodall v. Commissioner of Internal Revenue, 391 F.2d 775, 805 (8 Cir. 1968), cert. denied, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100.

5. In 1943 one Fifth Circuit judge, concurring specially, expressed doubt about the option's validity. Hunt v. Commissioner of Internal Revenue, 135 F.2d 697, 700 (5 Cir. 1943). Two years later that court squarely encountered the issue. Involved were fiscal years 1939 and 1940 and Regs. 101 and 103. The wells in question, with one exception, were productive. The taxpayers, in accord with prior practice, sought to deduct intangible drilling costs. The court observed the availability of the option by regulation since 1918; some difference between the Treasury Department and the Commissioner in interpretation of the regulation; the fact the issue of its validity was seldom raised; and the ad-

ditional fact that courts did not think it their business to raise the issue. The court stated that it was clear that a producing well is a permanent improvement. It held that the statute overrode the regulation, forbade deducting the costs in question as expenses, and provided, instead, that they be absorbed by depletion. It further held that no congressional acquiescence could be presumed where there was no statutory authority for the regulation. F. H. E. Oil Co. v. Commissioner of Internal Revenue, *supra*, 147 F.2d 1002 (5 Cir. 1945). There was a vigorous motion for rehearing and the court permitted briefs to be filed by numerous amici curiae. The court continued to refer to the Tenth Circuit as the only one which had squarely considered the validity of the option and noted that it had done so prior to the statutory introduction of percentage depletion for oil wells. The Fifth Circuit then adhered to its decision in 147 F.2d but found it "unnecessary to consider so broadly the validity of the option"; it confined its decision to a holding that wells drilled to get an oil property or a better interest in one are "so clearly capital investments in that property that no part of their cost can be called an expense of business." F.H.E. Oil Co. v. Commissioner of Internal Revenue, 149 F.2d 238, 239 (5 Cir. 1945). With the contemporaneous adoption of the Concurrent Resolution a second motion for rehearing was made. This also was denied. F.H.E. Oil Co. v. Commissioner of Internal Revenue, 150 F.2d 857 (5 Cir. 1945). The court observed that the Resolution was not an act of Congress and did not make law or change law.

6. It is obvious that the Fifth Circuit case and its impact on the industry prompted the adoption of the Concurrent Resolution of 1945.

7. The congressional policy expressed in the Concurrent Resolution also appeared in other tax areas. Section 433 (b) (9) (B) of the 1939 Code, added by the Excess Profits Tax Act of 1950, gave recognition to the existing practice of expensing drilling and development costs of oil and gas wells. In 1951, in providing a deduction for development costs of mines, committees observed that a like provision for oil and gas wells was not necessary because optional deduction of their intangibles was already permitted. H.R.Rep.No.586, 82d Cong., 1st Sess., 1951–2 C.B. 357, 379; S.R. No.781, 82d Cong., 1st Sess., 1951–2 C. B. 458, 489.

8. In 1952 Mim. 6754, 1952–1 C.B. 30, was issued. This recited that the Bureau "has given exhaustive consideration to the classification" of expenditures with reference to the option and stated:

"Section 29.23(m)–16(b) of Regulation 111 states that within the option are 'expenditures made by an operator for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas.' Such language excludes expenditures incurred in installing production facilities. The items thus excluded consist of expenditures relating to the installation of such equipment as pumping equipment, flow lines, separators, storage tanks, treating equipment, salt water disposal equipment, etc. Equipment of a character which is ordinarily considered as having a salvage value, whether it consists of production facilities or equipment necessary for the completion of a well, including cost of casing in a well (even though cemented in the well to such an extent that it has no net salvage value) is a depreciable item, the cost of which may be recovered only through the depreciation allowance."

9. Finally, we have § 263(c) of the 1954 Code as a specific enactment eliminating any remaining confusion as to the integrity of the statutory foundation. The statute was proposed in the Senate committee. S.R.No.1622, 83d Cong., 2d Sess. 225 (1954).

From this review of both the statutory plan and of the option's history one may observe:

1. The general and long recognized rule is that "expenses for permanent improvements or betterments" of property are to be capitalized and not expensed.

2. The 1945 Concurrent Resolution, although not enjoying statutory status, purported to afford congressional approval of the existing administrative grant of the option.

3. The approval was tied specifically to then existing regulations.

4. Those regulations denied the option to expenditures "by which the taxpayer acquires tangible property ordinarily considered as having a salvage value." They referred to "casing" as one of several examples of non-option costs. Reg. 111 § 29.23(m)–16(b) (3) (i).

5. The pertinent portion of the current regulations applicable to Harper's tax years under consideration reads identically with the pertinent portion of the regulations to which the Concurrent Resolution referred and which it purported to approve. Treas.Reg. § 1.612–4(c) (1).

6. In 1952 the Commissioner sought to clarify the situation further by the issuance of Mim. 6754. By that ruling he specifically denied the option to "Equipment of a character which is ordinarily considered as having a salvage value," thus echoing the words of the regulation, and going on to specify the "cost of casing in a well (even though cemented in the well to such an extent that it has no net salvage value) * * ".

With this background, Harper argues that the government too narrowly construes the word "casing" in the regulation and would treat all casing alike; that in the industry "surface-casing" has only one meaning and is to be differentiated from other casing; that if the Commissioner had desired to deny the option to surface-casing costs, he would have referred to surface-casing as well as to casing; that surface-casing is a product having no use and serving no purpose except to prevent contamination and caving; that surface-casing is never used as production casing; that the theory of depreciation is predicated on the assumption that the asset in question has a useful life or that it has a salvage value; that the cost of surface-casing "is completely lost from the moment it is set in cement in the ground"; that there can be no question of any salvage value because of the Oklahoma regulations prohibiting removal; that until Mim. 6754 was issued in January 1952 there was no attempt on the part of the tax authorities to deny the option to cemented surface-casing; that the 1952 ruling has no application anyway because surface-casing is not equipment "of a character which is ordinarily considered as having a salvage value" and is not a production facility or equipment necessary for the completion of a well; that the option apparently was allowed for surface pipe prior to 1952; that a revenue statute may not be altered or amended by regulation; that cemented surface pipe is a preliminary expense in well drilling; and that the 1952 ruling in its application to surface-casing is contrary to the permitted option. At oral argument Harper's counsel stated that the taxpayer for years had been expensing surface-casing and was never challenged. He conceded, in response to inquiry, that the concrete base and the "Christmas tree" must be capitalized although neither is salvageable.

We, of course, highly respect the reaction of the experienced district judge who tried this case and who has acquaintance with Oklahoma oil well problems. Nevertheless, we find ourselves in disagreement with the District Court and with the taxpayer. We conclude that the surface-casing costs in question are not subject to the option to expense, but are to be capitalized. We ar-

rive at this conclusion for the following reasons:

1. The option's history, outlined above, and the administrative treatment are not without significance:

    a. The option, although long possessed of dubious statutory ancestry, now has firm congressional authority in § 263(c) of the 1954 Code.

    b. The option obviously remains, however, as it has been since its birth in 1918, an addendum to the general capitalization principle enunciated by § 263(a).

    c. The election is for the taxpayer to make and he must make it on his return for the first tax year in which he pays or incurs the qualifying cost. If he fails to expense in that first return, he is deemed to have elected to recover the cost through depletion or depreciation, as the case may be. Treas.Reg. § 1.612–4(d).

All this is consistent with the concept that capitalization of this kind of cost is the rule and expensing the exception. This is where a court must begin its resolution of the issue.

■■ 2. A deduction is not a matter of right. It is, instead, a matter of legislative grace. It must be authorized by "clear provision." And it is the taxpayer who has the burden of demonstrating that he is entitled to the deduction. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); Calvin v. United States, 354 F.2d 202, 204 (10 Cir. 1965); Paxman v. Commissioner of Internal Revenue, 414 F.2d 265, 266 (10 Cir. 1969).

3. "Casing" appears to be a generic term in the industry. One authority says, "Most oil wells are completed with two strings of cemented casing, the surface pipe and the production string," but also speaks of a possible additional casing. H. Williams and C. Meyers, Oil and Gas Terms (2d ed.) p. 46. The same work observes, p. 364, "It is customary to set [cement] casing in the completion of a producing well." The record here is to like effect.

4. There is little magic about surface-casing as such. On occasion the production string itself may act as surface-casing. On occasion the string may even be cemented in part. Any casing which is cemented is not easily recovered or made profitably salvageable. Harper's president testified that it is not "usual" for them to recover all the production string.

5. The regulations consistently have listed "casing" among items the cost of which is to be capitalized and not subject to the option. See, for example, Reg. 118 § 39.23(m)–16(c) (1) and the present Treas.Reg. § 1.612–4(c) (1).

6. The successive earlier regulations and now § 263(c) consistently have related the option to "intangible" drilling and development costs. So does Treas. Reg. § 1.612–4(a). One might expect an expenditure for tangible hard goods, such as surface-casing, or any casing for that matter, not ordinarily to qualify as an "intangible" drilling or development cost. Standing in contrast, and qualifying, would be an appropriate labor or services cost. Mertens, in speaking of oil and gas well development expenditures, recognizes three types. One type, he says, "clearly constitutes tangible capital items" not subject to the option. Examples are "the cost of drilling tools, pipe, casing * * * etc." 4 Mertens Law of Federal Income Taxation § 24.47 p. 256 (1966). Yet the regulations consistently have regarded costs of some tangible items as subject to the option. See the last part of the final sentence of Treas.Reg. § 1.612–4(d). The dividing line is at the words "ordinarily considered as having a salvage value."

■ 7. The salvage value reference strikes us only as the usual, but not the necessary, characteristic of the non-option item. We do not regard salvage value as a condition of non-option status.

The successive regulations have consistently referred to "tangible property ordinarily considered as having a salvage value." See, for example, Treas.Reg. § 1.612–4(c) (1). Certainly, casing of all kinds *ordinarily* would be considered as having a salvage value. Harper's surface-casing used in Oklahoma in the presence of fresh water strata has no salvage value primarily because the Oklahoma regulations require cementing and prohibit removal. Otherwise there is no real argument that surface-casing, as such, "ordinarily" would not have a salvage value. Again Mertens refers to the practicalities. "Some of the casing and other equipment may be salvaged, but a considerable portion of it is likely to be lost in any event," and, "Casing used in a particular well can usually be salvaged in part, at least." 4 Mertens Law of Federal Income Taxation § 24.47 pp. 255–256.

8. There is no dispute that the costs of the components of the production string are not subject to the option. Yet, as we have noted, a part of the string often is cemented and thus made irremovable. But then the absence of salvage value does not qualify the cost of the cemented part of the string as expensable. Thus salvage value does not always attend a non-option cost. There is no more reason to say that the absence of salvage value qualifies a cost for the option.

9. We feel that the District Court too narrowly construed the term "ordinarily" in the governing regulation. It reasoned that because surface-casing in Oklahoma rarely, if ever, can be removed, it "ordinarily" could have no salvage value. We relate "ordinarily" to casing in general and not to Oklahoma surface-casing in particular. Casing is casing. And casing "ordinarily" has salvage value.

10. Mim. 6754, in our view, was not an attempt to change theretofore existing law. We regard it as an endeavor to spell out, in greater detail, and publicly, the administrative attitude as to casing, irrespective of its being cemented or loose.

11. It makes good common, accounting and tax sense generally to treat all casing alike and not to have the tax consequences of casing costs develop only on a case-by-case basis. Such ad hoc procedure would lead to possible inconsistencies and certainly to taxpayer and administrative confusion.

12. As we read the Oklahoma regulations, quoted above in footnote 2, and as Harper's president conceded on the stand, the placement and cementing of surface-casing are required in that state only when a fresh water stratum is encountered. This seems to draw a parallel to the situation where, for some operating or structural reason, part of the production string is cemented. In neither case do we see any logical requirement that the fact of cementing have a tax consequence in respect to the option. What is important in the tax sense is the nature of casing.

13. Of course, a regulation or ruling may not be sustained if it is "unreasonable and plainly inconsistent with the revenue statutes * * *". But unless the regulation or ruling is unreasonable and inconsistent in that respect, it is to be sustained; it is not to be overruled "except for weighty reasons." Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Bingler v. Johnson, 394 U.S. 741, 750, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969); United States v. Empey, 406 F.2d 157, 170 (10 Cir. 1969). The import of the regulation here and its classifications impress us as being an inherently reasonable and practical application of § 263(c) and the Concurrent Resolution. We feel the same is to be said of Mim. 6754. Each inoffensively makes explicit that which is more general and each is appropriately valid.

We are firmly convinced that the costs of Harper's surface-casing in the tax years in question are not subject to the

option. Accordingly, the judgment of the District Court is vacated and the case is remanded for the entry of a new judgment consistent with the views herein expressed.